**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **James Henry Chance and,** | ) | |
| **Audrey Aird** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.  1:12-cv-00591-LO-JFA** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Cardinal Forest Homeowners** | ) | |
| **Association,** | ) | |
| **Landmarc Real Estate,** | ) | |
| **Kelly Carder** | ) | |
| **Michael Carder** | ) | |
| **Joe Marie Moberg** | ) | |
| **George Speer** | ) | |
| **Doug Finch, and** | ) | |
| **Cheryl DiMaio** | ) | |
| | ) | |
| **Defendant(s).** | ) | |

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT,
MANDATORY INJUNCTIVE RELIEF, AND DAMAGES UNDER THE FAIR
HOUSING ACT AND VIRGINIA LAW**

1.       Plaintiffs Henry Chance and Audrey Aird, by counsel, file this Second Amended

Complaint, which adds paragraphs 1, 115 and 166, and amends paragraph 114 and 162.

2.       This is an action by Plaintiffs Henry Chance and Audrey Aird for declaratory

judgment, injunctive relief, and damages against Cardinal Forest Homeowner's Association (the

Association), Landmarc Real Estate (Landmarc), and certain Board Members of Cardinal Forest

in their individual and official capacities.

3.       First, Cardinal Forest, by and through its Board members, and Landmarc, engaged

in a pattern or practice of discriminatory conduct against Plaintiffs due to Plaintiffs' race.  For

instance, the current President of the Association has made statements to Plaintiffs such as, "You

niggers think that you can do anything you want." This discrimination has been further carried out through, among other things, oral conversations, written notices, calls to police, and a lawsuit. In addition, Plaintiffs have been disallowed from making reasonable modifications to their home to prevent water damage. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.* (Fair Housing Act) and section 36-96.1:1 of the Virginia Fair Housing Law, Va. Code Ann. §§ 36-96.1 - 36-96.23; 54.1-2343 - 54.1-2344, and under Virginia common law.

4.      Cardinal Forest, Landmarc, and the individuals named as Defendants in this complaint, have also defamed Plaintiffs and interfered with Plaintiffs' civil rights. These acts have severely affected Plaintiffs' use and enjoyment of their real property, has substantially caused Plaintiffs severe emotional distress, has affected Plaintiffs' ability to enter into contracts, and has further affected Mr. Chance's employment and Plaintiffs' ability to generate income through their family owned company.

5.      The discriminatory practices have continued repeatedly and without cessation since 1999.

6.      Plaintiffs seek declaratory judgment, mandatory injunctive relief, and damages for Defendants' discriminatory practices.

### JURISDICTION & VENUE

7.      This is a housing discrimination case arising under the Fair Housing Act, 42 U.S.C. §3601-3619 and the Virginia Fair Housing Law, Va. Code Ann. §§ 36-96.1-36-96.23; 54.1-2343-54.1-2344.

8.      This Court has jurisdiction over this action under 28 U.S.C. §§1331; 1343 and 42 U.S.C. § 3613(a)(1)(A) in that the claims alleged herein arise under the laws of the United States.

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine the Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to Plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

10.     Declaratory and injunctive relief is sought pursuant to 42 U.S.C. §3613(c)(1) and (2), as well as Rule 57 and Rule 65 of the Federal Rules of Civil Procedure.  This Court has jurisdiction to issue declaratory relief requested pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391 because the events or omissions giving rise to these claims occurred in the Eastern District of Virginia, and Defendants conduct business in the Eastern District of Virginia, specifically in or about Fredericksburg, Virginia and Stafford County, Virginia.

## PARTIES

12.     Plaintiff James Henry Chance is a resident of the Cardinal Forest subdivision in Fredericksburg, Virginia.   Mr. Chance is African-American.  He is married to Plaintiff Audrey Aird.  Mr. Chance has resided at his home in Fredericksburg since August of 1999.  Mr. Chance has a Bachelor of Science in Biology, a Masters of Science, and is currently writing his dissertation for his Ph.D.  He is an employee with Blue Star Software, but due to the highly confidential nature of his work and the nature of this and related litigation, he is unable to be on a contract with his employer and cannot draw his salary.

13.     As a resident of the Cardinal Forest subdivision, Mr. Chance is a member of Cardinal Forest Homeowner's Association, and he has and continues to be current on all owed

dues and assessments.  Mr. Chance has been, and continues to be, adversely affected by the acts, policies, and procedures of Defendants and their agents.

14.     Audrey Aird lives with Mr. Chance in the subdivision of Cardinal Forest.  She is married to Mr. Chance.  Ms. Aird is a light-skinned mixed Scotch-Irish and Jamaican (West-Indies) heritage who "passes" for Caucasian.  Ms. Aird works as a yoga and pilates instructor at the YMCA.  Ms. Aird is the named owner of record of Lot 36, with a mailing address of 1 Bellamy Lane, Fredericksburg, VA 22404.  Ms. Aird has been, and continues to be, adversely affected by the acts, policies, and procedures of Defendants and their agents.

15.     Upon information and belief, Cardinal Forest Homeowner's Association (the "Association") is a Virginia non-stock corporation in good standing with its principal office located at 3715 Latimers Knoll Court, Fredericksburg, Virginia, 22408.  It is the residential property owners' association for the community commonly known as Cardinal Forest ("Cardinal Forest").

16.     Upon information and belief, Landmarc Real Estate, Inc. ("Landmarc") is a real estate development, marketing, and management company that is incorporated in Virginia and has ventures primarily in the greater Fredericksburg area.  Landmarc's principal office is located at 3715 Latimers Knoll Court, Fredericksburg, Virginia, 22408.

17.     Upon information and belief, at all times relevant to this litigation, Landmarc has been the management company for, and agent of, the Association.

## FACTS

18.     In August of 1999, Ms. Audrey Aird purchased a home at 1 Bellamy Lane, Fredericksburg, Virginia 22406.

19.     The mortgage on the house is in Ms. Aird's name and is held by Wells Fargo Bank.

20.     Ms. Aird and her husband, Mr. Chance, immediately took up residence in this home with their small children.

21.     During the first month of Plaintiffs' residence (August 1999), Julie Cashman, acting in her capacity as a leader and member of the Cardinal Forest HOA Board of Directors, approached Mr. Chance at his residence and asked him if the owners of the house had employed him to do the yard work.

22.     Mr. Chance told Ms. Cashman that he and his wife were the new owners.

23.     Ms. Cashman, in a second encounter with Mr. Chance, stated to him, "If we [the Association Board] had known that the George's [the previous residents of the home] were selling to a Black family, the Board would have stopped the sale."

24.     During the period that Mr. Chance was having his first encounters with the Board leadership, Plaintiffs began to receive hate letters left at their door.

25.     The first letters were delivered in 1999.

26.     Most of the letters were written on pink stationery.

27.     The letters were signed "Cardinal Forest Homeowner's Association," or with similar indicia.

28.     These letters requested that Plaintiffs vacate and sell the property.

29.     While these first notices were hurtful to Plaintiffs, Plaintiffs did not want to draw attention to themselves and so did not respond.

30.     In September of 1999, another pink missive was delivered to Plaintiffs' door.

31.     This letter indicated that it was from "Julie," on behalf of the Cardinal Forest HOA Board.

32.     Upon information and belief, the author of this letter was Julie Cashman, an acting member of the Association's Board of Directors.

33.     Upon information and belief, Ms. Cashman at all times acted on behalf of the Association.

34.     The letter stated, "You do not look like us and the board and the people living here do not want to change our community.  We believe it is best that you move out of our neighborhood."  It further stated, "I am sure you will be happier living with your own kind.  If you look at your neighbors, you only see white people.  You are the only black and we believe you will be happier in a black neighborhood."

35.     This letter named "Art" as community manager, and stated that the community manager "will find the right neighborhood for you."

36.     In 1999, Art Chiavaroli was the community manager for Landmarc Real Estate, which did manage and presently continues to manage the property for the Association.

37.     Landmarc Real Estate never disavowed or disapproved of the Association's efforts to persuade Plaintiffs to sell their home and move out of the neighborhood.

**Letters Escalate Into Threats**

38.     In September 1999, Plaintiffs received a second pink letter.

39.     This letter read, "Henry everybody knows about your drug dealing.  We have notified the Sheriff [sic] department and they are watching you with everybody coming over there.  We see all of the big expensive luxury cars coming and going.  There is no way you people can afford Jaguar and Porsches to ride around in without dealing drugs.  Just get your black ass out and leave us alone.  You are not wanted in our good neighborhood.  Niggers like you people are destroying our neighborhood!  Everybody on the HOA board know [sic] that you deal drugs to afford to live in our neighborhood.  Sell the house and get out before it is too late."  This letter was signed "Cardinal Forest HOA Concerned Homeowners."

40.     Mr. Chance has never been a drug dealer.  In fact, other than minor traffic offenses, Mr. Chance has no criminal record.

41.     At some point in late 1999, Plaintiffs received yet another threatening letter on pink paper.  This letter stated, "We have told you people that we don't want you and your kind in our neighborhood.  Niggers like you bring crime and drugs with you and we don't want our children exposed that [sic].  The board and Landmarc offered to help you find somewhere else to live and you didn't take it."  It concluded in all caps as follows:  "NIGGERS !! GET OUT OF OUR NEIGHBORHOOD! YOU ARE NOT WANTED HERE!"  This letter was signed, "The Cardinal Forest HOA Board. "

42.     Mr. Chance became active in the Association in an attempt to make peace with the neighbors and to stop the letters from being delivered to his house.

43.     Mr. Chance was appointed to the Architectural Control Committee from October of 1999 through December of 2000.

44.     During the time that Mr. Chance was serving on the Architectural Control Committee, he was confronted with hateful language from members of the Association.

Members of the Board of Directors told Mr. Chance in open meetings that he should sell his house and leave.

45.     Additionally, the Association Board members refused to disavow or disapprove of the letters Plaintiffs had received at their house.  On the contrary, when Mr. Chance attended meetings of the Association to confront the Association about the letters, the Association Board also urged Plaintiffs to sell their home.

46.     Upon information and belief, the Association knew about the letters and approved of their content.

<u>**Other Discriminatory Actions of Cardinal Forest**</u>

47.     In the summer of 2000, Mr. Chance began to take his children to the community pool.

48.     Julie Cashman, acting on behalf of the Association, approached Mr. Chance at the pool and informed Mr. Chance that he was not welcome "because [he] was making all the white ladies in their bikinis nervous."  She went on to say, "You can find yourself accused of rape…and who do you think the police will believe, you or a white woman?"  Mr. Chance, not wanting to cause a disturbance or find himself falsely accused of any crime, chose to leave the pool.

49.     In the summer of 2001, Plaintiff Ms. Aird and Plaintiffs' two children were issued pool passes, but Mr. Chance was not.

50.     Plaintiffs' children could never enjoy the pool as an entire family because Mr. Chance was unwelcome to join them at the pool.

51.     The Association ratified Ms. Cashman's actions by never disavowing or disapproving Mr. Chance's expulsion from the pool grounds.

52.     Plaintiffs have suffered these communications from the time they moved in to the present.

53.     Plaintiffs' children have also suffered from discriminatory treatment.  In June of 2003, Plaintiffs' son was cyber-bullied and also attacked in the doorway of Plaintiffs' home. This attack led to criminal charges and findings of guilt against the attackers.  Upon information and belief, the attackers were in the neighborhood as friends of Defendants Kelly and Michael Carder's son.

54.     In 2003, Plaintiffs' bought their children a basketball hoop and installed it at the end of the driveway.

55.     In 2003, Landmarc sent Plaintiffs a letter stating that the Association board required Plaintiffs to take the basketball hoop down because it would lead to "undesirable people in the neighborhood."

56.     Accordingly, Mr. Chance removed the basketball hoop and the children were unable to play basketball in their yard.

57.     During the 2008 election, Plaintiffs' "Obama/Biden" yard signs were defaced.

58.     One sign was defaced with the words "Nigger Get out," and "Win and Die."

59.     Another sign was defaced with the words "Move out Now" and was initialed "HOA KC."

60.     Upon information and belief, Defendant Kelley Carder is the current President of the Cardinal Forest HOA and frequently signs her emails and other communications with her initials "KC."

61.     Another sign was defaced with the words, "Nigger Leave" and was signed "CF HOA."

62.     Over the last twelve years, when Mr. Chance attempted to participate in the Association, members of the Association's Board of Directors have made statements to Plaintiffs like, "I refuse to live this close to niggers." An Association Board member later said during an open meeting, "We are not going to approve the installation of basketball courts because the neighborhood will be full of blacks who don't live here;" and "We need to keep our daughter away from them black boys."

63.     Upon information and belief, the Association had knowledge of these statements, particularly since statements alleged in Paragraph 61 were made during the Association's open meetings, and the Association ratified these statements by refusing to disapprove or disavow these statements.

**Landmarc's Actions as Agent of the Association**

64.     The Association, along with and through its agent Landmarc Real Estate, has refused to allow Plaintiff to make repairs on his property.

65.     On October 22, 1999, Plaintiffs submitted their first request to landscape and to construct a retaining wall with drainage control.  The purpose of the change was to direct rainwater and surface runoff to the west side of the property and prevent basement flooding. They also requested to build an exterior shed.

66.     This request included sketch drawings that showed the manner and scope of the proposed work.

67.     During a Board meeting either in 1999 or 2000, a building committee member of the Association stated to Mr. Chance, after the Board denied his request, "You don't look like us.  Sell your house and move away.  We ain't gonna approve nothing for you."

68.    On or about spring of 2000, Plaintiffs again submitted a written request for approval (including drawings) to implement yard drainage control, and build a retaining wall and exterior shed.

69.    On June 18, 2000, Ms. Aird received a phone call from a man who identified himself as Art Chiavaroli.  Mr. Chiavaroli worked for Landmarc Real Estate as the manager of the Association.  He denied the work request without explanation and did not leave a working telephone number where he could be reached.

70.    Mr. Chiavaroli later told Plaintiffs that Landmarc was "just doing as it was told."

71.    Upon information and belief, Mr. Chiavaroli has been promoted within Landmarc and no longer manages the Association.

72.    Upon information and belief, Landmarc knew of and approved the Association's discriminatory intent to prevent Plaintiffs from making necessary repairs to their property.

73.    On June 18, 2000, Ms. Aird wrote a letter to the Cardinal Forest Community Association in an attempt to clarify the problem with the request for construction.

74.    Landmarc, on behalf of the Association, contacted Plaintiffs and denied their requests.  Although Plaintiffs requested that Landmarc or the Association put the rejection in writing, Landmarc never issued a formal rejection of Plaintiffs requests.

75.    Over the next two years, Plaintiffs submitted numerous requests for construction for consideration, review and approval.

76.    On February 27, 2002, Mr. Chance wrote to Cardinal Forest Community Association and the Management Company of Landmarc Real Estate in an attempt to clarify the problem with the repeated requests.

77.     In the February 27, 2002 letter, Mr. Chance noted that the request for construction documents had been submitted several times.

78.     Neither the Association nor Landmarc ever issued a denial of the Plaintiffs' requests in writing.  Rather, members of the Association or Landmarc would communicate orally with Plaintiffs and ask them to make changes to the plans.  Plaintiffs would modify the plans as requested, only to be met with further rejection of the plans.

79.     Plaintiffs continued to submit written requests to the Architectural Control Committee (the "Committee") using the required forms and with the required drawings.  They petitioned for construction to prevent damage to their home from erosion and flooding.

80.     These requests included, but are not limited to, application forms and drawings submitted on March 18, 2004 and April 9, 2006.

81.     In August of 2004, Mr. Chance took a friend with him to ask Mr. Chiavaroli of Landmarc about the status of one of his requests.  Mr. Chance introduced his friend as an attorney.  During that meeting, Mr. Chiavaroli then orally gave Mr. Chance permission to construct a shed on his property, which was part of Mr. Chance's construction request.

82.     Mr. Chance had a shed built on his property.

83.     In September or October of 2004, after the shed was built with permission from Mr. Chiavaroli, Mr. Chiavaroli visited Plaintiffs and instructed them to tear down the shed, claiming it did not meet Association requirements.

84.      Plaintiffs incurred the expense of tearing down and rebuilding the shed.

85.     Between 2004 and 2012, Plaintiffs submitted requests for construction to the Architectural Control Committee semi-annually.

86.     Landmarc, as the managing agent for the Association, was responsible for communicating these requests to the Board and delivering to Plaintiffs the news that Plaintiffs' applications were rejected.

87.     Upon information and belief, Landmarc advised the Board about how to respond to Plaintiffs' requests.

88.     Plaintiffs requested that Landmarc reconsider these rejections.

89.     Plaintiffs requested that Landmarc hire engineers to inspect the damage at Plaintiffs' home, at Plaintiffs' expense.  Landmarc refused.

90.     Landmarc employees told Plaintiffs that they were acting at the direction of the Association and could only follow the orders of the Association.

91.     On January 23, 2012, Plaintiffs mailed yet another request to the Architectural Control Committee of the Board to begin the necessary construction and modifications to their home.

92.     The Cardinal Forest Homeowner's Approval Packet states, "In the event said Committee fails to approve or disapprove such design and location within fifteen (15) days after said plans and specifications have been submitted to it by a Builder (or 60 days after submission by an Owner), or in any event, if no suit to enjoin construction has been commenced within 60 days after the completion thereof, approval will not be required and this Article will be deemed to have been fully complied with."

93.     Cardinal Forest Architectural Review Committee's Mission Statement states that "The committee will be fair in review of all submitted proposals and can provide assistance to our residents with advice and a prompt approval process."

94.     Mr. Chance began in mid-February of 2012 to exchange emails with Association board members, Landmarc, permitting agencies, and others regarding the extent and scope of the planned construction.

95.     In February of 2012, Mr. Chance also had telephone conversations with Lisa Barnes, a Landmarc employee, and other Landmarc employees who answered the telephone, regarding the extent and scope of the planned construction.

96.     Plaintiffs also notified their neighbors of the extent and scope of the planned construction.

97.     Mr. Chance, having received no formal denial from the Committee within 60 days, entered into a contract with Max Jones Construction to perform the work.

98.     Construction began in April of 2012.

99.     On April 20, 2012, Mr. Chance received a Construction Immediate Cease and Desist order from Lisa Barnes, the Landmarc Community Manager, on behalf of the Board of Directors for the Association.

100.     During conversations with Defendant Kelly Carder about the Cease and Desist order, Ms. Carder told Mr. Chance, "You niggers think that you can do anything you want."

101.     During conversations with Lisa Barnes of Landmarc, Ms. Barnes told Mr. Chance, "We're going to do everything we can to stop you people from doing the construction. The HOA Board doesn't want the construction done."

102.     As a result, Plaintiffs sustained damages from the breach of contract with Max Jones Construction, and Plaintiffs sustained further damage to the home because the necessary construction could not be completed due to the Cease and Desist Order.

103.    While Plaintiffs' repeated requests since 1999 for construction have been ignored, denied, or granted by silence and then revoked by court action, Plaintiffs' residence has sustained substantial damage that threatens the integrity of the home.

104.    The damage to the home includes, but is not limited to: stress fractures in the shifting concrete slab of the foundation; stress fractures in the concrete walls of the basement; warping and buckling of the floors on and near the kitchen / garage door; a two degree tilt in the concrete slab of the basement; front-door steps separating from the concrete wall; and other structural and visual integrity issues.

105.    After the construction project was enjoined, the Plaintiffs repeatedly requested that the Association allow them to install drainage control systems, surface erosion controls, and retaining walls to prevent continued damage.  Defendants have repeatedly ignored or denied the requests.

106.    Upon information and belief, Caucasian homeowners in the subdivision installed similar, if not identical, drainage control systems, surface erosion controls, and retaining walls without being asked to submit an application to the Board of Cardinal Forest.  Alternatively, Caucasian homeowners' applications were approved without any harassment or delay.

107.    Upon information and belief, this refusal to consider Mr. Chance's construction requests in good faith is a breach of the Association's by-laws as set forth in the By-laws of Cardinal Forest Homeowners Association.

108.    Plaintiffs continue to apply for approval to make modifications to their home.

109.    As recently as November 20, 2012, Kelly Carder hit reply-all to an email from Mr. Chance requesting to be put on the Association's meeting agenda in order to discuss the

pending construction.  Kelly Carder's email stated, "What a pain – he will get his 3 minutes – with no response from the board, I will not engage in a conversation with either of them."

110.    Upon information and belief, Defendants continue to refuse Mr. Chance full approval to modify his home in the hope that Plaintiffs will move.

111.    Upon information and belief, Kelly Carder has informed other members of the Association that she blames Plaintiffs for desegregating (and accordingly "ruining") the neighborhood.

112.    Upon information and belief, Kelly Carder, Michel Carder, Joe Marie Moberg, George Speer, Doug Finch, and Cheryl DiMaio have agreed to block Plaintiffs from attending or participating in Association meetings.

113.    In the last few years, Defendants have adjourned open meetings attended by Plaintiffs, and rescheduled the meetings to be held as closed meetings.  Defendants did so in order to prevent Plaintiffs from recording the meetings.

114.    As a direct result of the Defendants' violations and breaches, Plaintiffs have suffered extensive damage to their home, including but not limited to over $400,000 in maintenance repairs for the drainage and water damages from 1999 to 2013 and structural damage to the house exceeding $151,100.00.

115.    Likewise, in January 2013, Plaintiffs were candidates for the Cardinal Forest HOA Board Membership.  There were nine board positions available and there were 8 candidates, including Plaintiffs.  One candidate was absent and thus disqualified.  Both Mr. Chance and Mr. Aird were candidates and received votes  After the votes were collected and counted, the Defendant Cardinal Board Members arbitrarily announced that they were reducing the board membership from 9 to 5 members and that the previous Board members would

unilaterally decide who would serve on the 2013 HOA Board.  At this same meeting Defendant Kelly Carder told Mr. Chance that "we don't want you Niggers on our board."

### Dog Waste

116.    Cardinal Forest's Board has repeatedly refused to support Plaintiffs' property rights.  As a result, he has had no choice but to resort to the courts for remedy.

117.    For instance, a resident of Cardinal Forest continually brought his dog to defecate on the Plaintiffs' lawn.

118.    Mr. Chance had an adverse reaction to the dog waste.

119.    In March of 2012, Mr. Chance requested that the resident stop leaving pet waste on his lawn, and explained to him that the waste was making him sick.

120.    The dog owner refused to cease leaving pet waste on the Plaintiffs' lawn.

121.    Mr. Chance approached the Association board and asked for help regarding this particular neighbor.  Cardinal Forest provided no support.

122.    In fact, instead of offering any support, Mr. Chance was told: "If you don't like living in dog shit, move out of our neighborhood;" and, "There is nothing we can do about people and their dogs."

123.    Accordingly, Mr. Chance had no alternative to seeking the protection of the courts.

124.    Mr. Chance was successful in his litigation against the dog owner and his health has improved.

### Additional Retaliation by the Association

125.    In early 2012, Mr. Chance filed a *pro se* motion in state court in an attempt to have the Defendants' Cease and Desist Order removed.

126.    Mr. Chance's motion attempted to address the discriminatory motive behind the Order.

127.    Mr. Chance informed his neighbors about his motion and the discriminatory motive behind the cease and desist order.

128.    On May 22, 2012, the Association brought a suit in Virginia state court against Plaintiffs, *Cardinal Forest Homeowners Association v. James Henry Chance and Audrey A. Aird* (CL 12.633).

129.    This suit alleged, among other things, that Mr. Chance and Ms. Aird had engaged in "de-facto mutiny" and defamation by encouraging fellow homeowners and members of the Association to change the composition of the Board in order to stop the Board's discriminatory conduct.

130.    Plaintiffs deny that they have committed any defamation, and the suit is pending.

131.    Upon information and belief, the Association filed the defamation action to retaliate against Plaintiffs for filing a motion to remove the Cease and Desist Order and in retaliation for asserting their right to be free from discrimination.

## CAUSES OF ACTION

### COUNT I
**Discrimination Under the FHA**
**VA Property Owners' Association Act**
**42 U.S.C. 3602(b), 42 U.S.C. 3604(b),** *et seq.*
**VA 55-508,** *et seq.*
**(Cardinal Forest, Landmarc, Kelly Carder, and Michael Carder)**

132.    Plaintiffs incorporate each preceding paragraph.

133.     At the time of the actions detailed in this complaint, Plaintiffs have resided at 1 Bellamy Lane, Fredericksburg, VA.  The dwelling at 1 Bellamy Lane, Fredericksburg, VA is occupied, designed, and intended for occupancy, as a family residence.

134.     Cardinal Forest and Landmarc Real Estate have continued to discriminate against Plaintiffs by refusing to allow them to participate in Association meetings, denying Plaintiffs' requests for building permits, and denying them the right to other Association benefits.

135.     Cardinal Forest has continued to discriminate against Plaintiffs by terminating Association meetings when Plaintiffs are in attendance.

136.     In addition, upon information and belief, Kelly Carder has repeatedly contacted law enforcement to report when Mr. Chance is walking through the neighborhood.  As a result, he has been frequently stopped by the police.

137.     Upon information and belief, Cardinal Forest has ratified the conduct of its director Julie Cashman when she expelled Mr. Chance from the community pool.

138.     Upon information and belief, Kelly Carder, acting on behalf of the Association, has ensured that Plaintiffs are unable to post signs supporting their candidate without having their signs destroyed or defaced with racial slurs and threats to vacate the property.


### COUNT II
**Publications of Notices Indicating Racial Preference with Respect to Sale of a Dwelling**
**42 U.S.C. 3604(c)**
**VA Statute § 36-96.3**
**(Cardinal Forest; Landmarc; Kelly Carder)**

139.     Plaintiffs incorporate each preceding paragraph.

140.    Defendants Cardinal Forest, its agent Landmarc, and members of the Cardinal Forest Architectural Control Committee have repeatedly refused to permit Plaintiffs' requests to make reasonable and necessary modifications to their home.

141.    The Defendants have printed and published notices to the Plaintiffs that they should sell their dwelling on account of Plaintiffs' race.

142.    Upon information and belief, Kelly Carder defaced Plaintiffs' yard signs with racially charged language indicating the Association would like Plaintiffs to leave the neighborhood because of their race.

143.    Defendants wish to force Plaintiffs out of Cardinal Forest because of Plaintiffs' race.

144.    Defendants' actions have interfered with Plaintiffs' privilege of homeownership as well as in the provision of services, such as use of neighborhood sidewalks and HOA pool and tennis courts.

## COUNT III
### Retaliation for Exercising FHA Rights
### 42 U.S.C. 3617 – Interference, Coercion, or Intimidation
### (Cardinal Forest; Landmarc; Kelly and Michael Carder)

145.    Plaintiffs incorporate each preceding paragraph.

146.    Defendants have continually attempted to coerce, intimidate, threaten, and interfere with Plaintiffs' exercise of their rights granted or protected by 42 U.S.C. §3603, 3604, 3605, or 3606.

147.    Defendants have *inter alia* defaced Plaintiffs' yard signs with racial slurs and closed Association meetings to dissuade Plaintiff from participation.

148.    In addition, Defendants caused an action for defamation to be initiated against Plaintiffs in state court.

149.    Defendants took these actions against Plaintiffs in retaliation for Plaintiffs attempts to exercise their FHA rights.

## COUNT IV
### Breach of Contract and of Covenants, Conditions and Restrictions
### VA Common Law & VA § 59.1-507.1
### (Cardinal Forest, Landmarc)

150.    Plaintiffs incorporate each preceding paragraph.

151.    Owners of residences in the Cardinal Forest subdivision are obligated to join the Association because of the covenants, conditions, and restrictions (CC&Rs), which run with the land.

152.    The Association has a duty under the CC&R's and its own bylaws to inspect and consider in good faith any requests or applications for building modifications and improvements.

153.    At all times pertinent to this litigation, Plaintiffs have paid and continue to pay their homeowner's association dues, providing the consideration for the Association's duty.

154.    Cardinal Forest and its agent Landmarc have materially breached their agreement with Plaintiffs by refusing to consider Plaintiffs' applications for modifications in good faith.

155.    The extensive damage to Plaintiffs' home is directly caused by Defendants' breach of its contract with Plaintiffs.

## COUNT V
### Violation of Virginia's Open Meeting of HOA Board of Directors Statute
### VA §55-510.1
### (Cardinal Forest, Kelly Carder, Michael Carder, Joe Marie Moberg, George Speer, Doug Finch, and Cheryl DiMaio)

156.    Plaintiffs incorporate each preceding paragraph.

157.    Virginia requires that all meetings of the board of directors, including any subcommittee or other committee thereof, shall be open to all members of record.

158.    Defendants frequently adjourn open meetings or hold closed meetings.

159.    Defendants have informed Plaintiffs that they hold closed meetings in order to avoid having the meetings recorded.

160.    Upon information and belief, Defendants adjourn open meetings and hold closed meetings in order to prevent Plaintiffs' participation in those meetings.

## COUNT VI
### Defamation
### VA §8.01-247.1, VA §18.2-417, and Common Law
### (Kelly Carder, Michael Carder)

161.    Plaintiffs incorporate each preceding paragraph.

162.    Upon information and belief, on several occasions after May 31, 2011 Defendants Kelly Carder and Michael Carder have communicated to Plaintiffs' neighbors that Mr. Chance is a drug dealer.

163.    This statement is false: Mr. Chance does not deal drugs and never has been accused of the crime of dealing drugs.

164.    Defendants Kelly Carder and Michael Carder know the statement to be false.

165.    These statements cannot be construed as anything but an insult to Mr. Chance and constitute defamation *per se*.

166.    Additionally, Defendants have called Plaintiff odious and offensive racial epithets on multiple occasions.

## COUNT VII
### Intentional Infliction of Emotional Distress
### VA Common Law
### (Cardinal Forest, Landmarc Realty, Kelly Carder, Michael Carder)

22

167.    Plaintiffs incorporate each preceding paragraph.

168.    In the last two years, Defendant Kelly Carder has repeatedly called Mr. Chance a "Nigger" to his face and has called the police when Mr. Chance has attempted to walk in his neighborhood.

169.    The actions of the Defendants as alleged in this complaint have caused suffering to Plaintiffs' children by causing the family home to fall into disrepair and by preventing their father's access to the neighborhood's amenities.

170.    The Defendants' actions are so outrageous and intolerable that they violate the generally accepted standards of decency and morality.

171.    The members of the Architectural Control Committee and the Association had full knowledge of the damage occurring to Plaintiffs' property as a result of their failure to consider and approve Plaintiffs' plans for construction.

172.    Upon information and belief, members of the Architectural Control Committee and the Association have sought to cause emotional distress to the Plaintiffs so that the Plaintiffs would be motivated to leave their home.

173.    The actions of Defendants have indeed caused Plaintiffs severe emotional anguish.

174.    Mr. Chance lost an employment contract due to his inability to concentrate on his work because of Defendants' actions.

175.    Ms. Aird and Mr. Chance have suffered marital strife as a result of Defendant's actions, and Plaintiffs' children have also been affected by the emotional distress caused to Plaintiffs.

**COUNT VIII**
**Race Discrimination**

**42 USC § 1981**
**Cardinal Forest, Landmarc Realty**

176.    Plaintiffs incorporate each preceding paragraph.

177.    Plaintiff Henry Chance is an African-American male.

178.    Plaintiff Audrey Aird is of mixed Scotch and Jamaican (West Indies) heritage.

179.    Plaintiffs are members of a protected class based on their race.

180.    Upon information and belief, Defendants Kelly Carder, Michael Carder, the Board of Directors of the Association and the employees of Landmarc are Caucasian.

181.    Section 1981 of the Civil Rights Act of 1866, as amended, protects the making, performance, modification, and termination of contract, and the enjoyment of benefits, privileges, terms and conditions of the contractual relationship, including at-will employment contracts.

182.    Defendants and their agents have intentionally discriminated against Plaintiffs based on their race by breaching their contract with Plaintiffs as members of the Association.

183.    Additionally, the discriminatory actions of defendants and their agents interfered with Plaintiffs' ability to enter into and fulfill their side of contractual relations with contractors, specifically to have the construction work done on their home.

184.    This interference with Plaintiffs' contractual relationships has caused significant financial loss as Defendants knowingly caused Plaintiffs to breach the contracts with the contractors they had engaged.

185.    Defendants' denial of Plaintiffs' rights constitutes discrimination in violation of 42 U.S.C. § 1981.

**COUNT IX**
**Attempted Statutory Conspiracy in Violation of VA Code § 18.2-499(B) and 500**
**Violation of 42 USC 1985(3)**

**(Kelly Carder, Michael Carder, Jo Marie Moberg, George Speer; Dough Finch; and Cheryl DiMaio)**

186.    Plaintiffs incorporate each preceding paragraph.

187.    Upon information and belief, all individual Defendants named herein have met, discussed, and colluded during closed meetings of the Board of Directors in order to prevent Plaintiffs from making necessary modifications to their home.

188.    The conspiracy's purpose was to threaten, harass, and deprive Plaintiffs of their rights to housing in good repair and to deprive Plaintiffs of equal protection under the law.

189.    As a result, Plaintiffs have suffered injury to their property and to their persons in the form of severe emotional distress.

190.    Each defendant named herein has committed an act to further the conspiracy to prevent Plaintiffs from being able to make necessary repairs to their home.  Defendants have, *inter alia*, denied valid requests for construction and have voted to close open meetings attended by Plaintiffs primarily to discourage their participation.

191.    As alleged herein, Defendants have colluded to deprive the Plaintiffs of their Fair Housing rights based on the race of the Plaintiffs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, James Henry Chance and Audrey Aird, pray:

(a)     That the Court find in favor of Plaintiffs against Defendants on each claim;

(b)     That the Court declare the actions of Defendants and/or their agents complained of herein to be in violation of the Fair Housing Act as amended 42 U.S.C. 3601 *et seq.* and section 36-96.1:1 of the Virginia Fair Housing Law, Va. Code Ann. §§ 36-96.1 - 36-96.23; 54.1-2343 - 54.1-2344;

(c)     That Defendants, their agents, employees, and successors be permanently enjoined from discriminating on the basis of race against any person in violation of the Fair Housing Act or the Virginia Fair Housing Law;

(d)     That the Court require Defendants to approve necessary construction to repair the residence and the grounds;

(e)     That appropriate compensatory and punitive damages be awarded to Plaintiffs and against Defendants;

(f)     That the Court grant consequential damages to Mr. Chance for the employment salary and benefits lost due to the intentional infliction of emotional distress and the career consequences he has suffered as the result of having to bring this action to enforce his rights, including, as permissible:  back pay, front pay, prejudgment interest, value of lost fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate them for the civil rights violations described above, in amounts to be determined at trial;

(g)     That the Court grant monetary relief and damages to reimburse and compensate Plaintiffs for the years of attempted efforts to have their construction approved;

(h)     That the Court grant an award of costs and reasonable attorney's fees; and

(i)      That the Court grant any other relief the Court deems just and equitable.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

James Henry Chance
Audrey Aird


By_____/s/_____
Counsel for James Henry Chance and Audrey Aird

Stephen J. Stine, Esq.
The Stine Law Firm, PLLC
3900 Jermantown Rd., Suite 300
Fairfax, VA 22030-4900
Office Phone: 703-934-4647 Ext. 316
Cell Phone: (703) 201-5075
Fax: (703) 995-4756
Email: stine@stinelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2013, I will electronically file the foregoing Second Amended Complaint with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Jeremy D. Capps
> Attorney for Landmarc Real Estate
> Harman, Claytor, Corrigan, & Wellman
> P.O. Box 70280
> Richmond, Virginia 23255
> jcapps@hccw.com
>
> Jennifer Lee Parrish
> Medford J. Brown, IV
> Parrish, Houck, & Snead, PLC
> 701 Kenmore Ave, Suite 100
> P.O. Box 7166
> Fredericksburg, VA 22401-7166
> brown@phslawfirm.com

> _____/s/_____
> Stephen J. Stine, Esq.
> The Stine Law Firm, PLLC
> 3900 Jermantown Rd., Suite 300
> Fairfax, VA 22030-4900
> Office Phone: 703-934-4647 Ext. 316
> Cell Phone: (703) 201-5075
> Fax: (703) 995-4756
> Email: stine@stinelaw.com
>
> Counsel for James Henry Chance and Audrey Aird